UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                                   :
JOHN R. CLARK, individually and on behalf of all                   :
putative class members,                                            :
                                                                   :
                          Plaintiff,                               :
                                                                   :              23 Civ. 7806 (JPC)
              -v-                                                  :
                                                                   :             OPINION AND ORDER
COOPERFRIEDMAN ELECTRIC SUPPLY CO., INC.                           :
D/B/A COOPER POWER SYSTEMS and COOPER                              :
ELECTRIC SUPPLY CO.,                                               :
                                                                   :
                          Defendants.                              :
                                                                   :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        Plaintiff John Clark brings this putative class action against Defendants CooperFriedman

Electric Supply Co., Inc. and Cooper Electric Supply Co. ("Cooper"), alleging that Cooper failed

to pay him (and proposed class members) wages (1) on a weekly basis, in violation of Section

191(1)(a) of the New York Labor Law ("NYLL"), and (2) in accordance with local prevailing

wage rates, in breach of various public works contracts into which Cooper purportedly had entered.

Cooper moves to dismiss Clark's NYLL claim for lack of standing and for failure to state a claim

respectively under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure and

moves to dismiss Clark's contractual and quasi-contractual claims for failure to state a claim under

Rule 12(b)(6).  For the reasons that follow, the Court denies Cooper's motion insofar as it seeks

dismissal of Clark's NYLL claim under Rule 12(b)(1) and dismissal of Clark's contractual and

quasi-contractual claims under Rule 12(b)(6), and the Court reserves ruling on Cooper's motion

insofar as it seeks dismissal of Clark's NYLL claim under Rule 12(b)(6) pending the potential

resolution by the New York Court of Appeals of the issue squarely presented.

# I. Background

## A.    Facts[1]

From approximately December 18, 2018, to September 30, 2022, Clark worked as a generator maintenance technician for Cooper.  Complaint ¶ 13.  Throughout his employment, Clark worked on "various private and public projects, including public buildings and facilities in New York County, Kings County, Bronx County, Nassau County, Suffolk County, and [] various locations in New Jersey."  *Id.* ¶ 20.  Nearly all of Clark's duties consisted of physical tasks, including "changing the oil or radiator fluid in generator engines, cleaning generator components, replacing filters, repairing and replacing generator components, inspecting generators, performing generator load tests, testing and repairing transfer switches, maintaining generator cooling systems, taking oil and coolant samples and tightening generator belts and rings."  *Id.* ¶¶ 14-15.

Clark typically worked eight-hour to ten-hour shifts, five days a week, for a total of approximately forty to fifty hours each week.  *Id.* ¶ 17.  He was paid at a rate of roughly $36.50 per hour at the beginning of his employment, $37.50 per hour approximately a year into his employment, and $38.50 per hour in his final year of employment—with his wages disbursed every other week.  *Id.* ¶¶ 16, 18.  Clark received no health insurance or other "fringe benefits."  *Id.* ¶ 16.

Clark alleges that Cooper entered into various "public works contracts as prime and/or sub-contractors with public entities"—including but not limited to the "New York City Housing Authority, New York City Department of Homeless Services, New York City Department of

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Complaint, Dkt. 1 ("Complaint").  *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiffs' favor").

Environmental Protection, Nassau County Correctional Facility, Sachem Central School District, City of Glen Cove, William Floyd Union Free School District, [and] multiple Boards of Cooperative Educational Services (BOCES) throughout New York State"—for work on generators and related equipment in government-funded buildings and facilities in New York (the "Public Works Contracts"). *Id.* ¶ 56. Clark further alleges upon information and belief that each of these contracts required Cooper to pay its workers "at or above local prevailing wage rates," as provided under Article 8, Section 220 of the NYLL. *Id.* ¶ 57.

**B.    Procedural History**

On September 1, 2023, Clark filed this putative class action against Cooper, asserting (1) that he is a manual worker entitled to weekly (rather than biweekly) pay under Section 191 of the NYLL ("Count One"), *id.* ¶¶ 64-67, (2) that Cooper breached the Public Works Contracts with various "prime and/or sub-contracts with public entities," *id.* ¶ 56, by failing to pay Clark, a purported third-party beneficiary of those contracts, local prevailing wages ("Count Two"), *id.* ¶¶ 68-72, and (3) in the alternative to that breach-of-contract theory, that Cooper was unjustly enriched by failing to pay Clark such prevailing wages ("Count Three"), *id.* ¶¶ 73-79.

On January 12, 2024, Cooper filed a motion to dismiss the Complaint in its entirety. Dkt. 21 ("Motion"). In addition to arguing that Clark failed to state claims for breach of contract and unjust enrichment, *id.* at 14-18, Cooper maintained that Clark's Section 191 claim must be dismissed for Clark's lack of standing and for the absence of a private right of action for such a claim, *id.* at 5-14. Specifically, Cooper argued that the New York Supreme Court's Appellate Division, First Department, erred when it held in *Vega v. CM and Associates Construction Management, LLC*, 107 N.Y.S.3d 286 (1st Dep't 2019), that Section 198 of the NYLL—based on its plain language and the intent of the legislature—both impliedly and expressly provides a private

right of action where a manual worker is paid all his or her wages biweekly, rather than weekly as required under Section 191(1)(a).  Motion at 5-6, 10-14; *see Vega*, 107 N.Y.S.3d at 287-89.  Five days after Cooper filed its motion, the New York Supreme Court's Appellate Division, Second Department, issued a decision disagreeing with *Vega*.  In that decision, *Grant v. Global Aircraft Dispatch*, 204 N.Y. 3d 117 (2d Dep't 2024), the Second Department, also upon examination of the statute's plain language and legislative history, held that Section 198 neither expressly nor impliedly provides a private of action for manual workers paid biweekly in violation of Section 191(1)(a).  *Id.* at 122-25.

On January 19, 2024, Clark opposed the motion, Dkt. 23 ("Opposition"), addressing *Grant* only limitedly, *see id.* at 1 n.2 ("Although Defendants' Motion does not rely on *Grant*, [Clark] nevertheless addresses it herein where appropriate.").  In its reply filed on February 7, 2024, Cooper principally argued that this Court should follow *Grant*, buttressing its position with references to (1) the inclusion in the Governor's 2025 executive budget proposal of an amendment to Section 198(1-a) that, according to Cooper, would clarify that an employee is *not* entitled to liquidated damages for Section 191 violations "where the employee was paid in accordance with the agreed terms of employment, but not less frequently than semi-monthly" and (2) excerpted transcripts of various conferences in which a judge in this District expressed skepticism that liquidated damages in the amount of the full week of wages allegedly paid late would be reasonable.  Dkt. 26 ("Reply").

Then, on February 9, 2024, Clark moved to strike the Reply, challenging the propriety of Cooper introducing "new evidence" in the form of those excerpted transcripts and raising "new arguments" based on *Grant* and the Governor's executive budget proposal, both of which Clark recognized were not available when Cooper filed its motion to dismiss.  Dkt. 28.  Clark further

requested that the Court, in the alternative, grant him leave to file a sur-reply. *Id.* at 1. On February 19, 2024, Cooper argued that Clark's letter was itself a sur-reply submitted impermissibly without leave of this Court and requested that the Court disregard that letter and deny the request to strike its Reply. Dkt. 29.

While these motions were pending, on June 4, 2024, Clark alerted this Court to decisions in this Circuit declining to follow *Grant*. Dkt. 30. On June 12, 2024, Cooper countered, arguing, *inter alia*, that "the slate of recent conflicting decisions demonstrate that the issue is ready to be heard expediently by the [New York] Court of Appeals" and that "if the court is not inclined to take a position on the issue, the proper and prudent course of action is not a denial of Cooper's motion but instead a stay [of] these proceedings until the [New York] Court of Appeals settles the debate between *Vega* and *Grant*." Dkt. 32. The Court thereafter solicited Clark's position on a potential stay of the instant litigation, Dkt. 35, and Clark expressed his opposition, urging this Court at the very least to issue a decision on the portion of Cooper's motion related to Clark's claims for breach of contract and unjust enrichment, Dkt. 36. In that submission, Clark represented that "there is no risk of waste or prejudice in proceeding with discovery because the discovery necessary for [Clark]'s prevailing wage claim will require much of the same documents and information as the discovery necessary for [Clark]'s untimely wage claim—i.e., records regarding the type of work performed and the wages paid by [Cooper] for such work—plus additional records unrelated to the NYLL § 191 claim." *Id.* at 2-3. Two days later, Cooper clarified that it was not moving for a stay of the proceedings in its June 12, 2024 letter, but rather that it was expressing its lack of opposition should the Court *sua sponte* "decide[] in its wisdom that waiting for the inevitable ruling of the Court of Appeals is the prudent course of action." Dkt. 37.

## II.  Legal Standard

### A.    Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Challenges to the Court's subject matter jurisdiction under Rule 12(b)(1) come in two forms: facial or factual. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  Where, as here, the defendant raises a facial challenge to standing, *i.e.*, one "based solely on the allegations of the complaint or the complaint and exhibits attached to it," the Court's task "is to determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (cleaned up).  The plaintiff bears no evidentiary burden in refuting such a challenge.  *Id.*

### B.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a complaint must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  These "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Indeed, the plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

6

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it "need not consider conclusory allegations or legal conclusions couched as factual allegations," *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).

## III.  Discussion

### A.    Violations of New York Labor Section 191

In Count One, Clark alleges that Cooper violated his right to receive weekly payments under New York Labor Law Section 191, which provides, with an exception not relevant here, that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which wages are earned," N.Y. Lab. Law § 191(1)(a).  *See* Complaint ¶¶ 64-67.  In connection with this claim, Clark seeks "to recover from Defendants the amount of the underpayments caused by their untimely wage payments as [well as] liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest, as provided for by NYLL § 198." *Id.* ¶ 67.  Cooper urges dismissal of this claim under both Rule 12(b)(1) and Rule 12(b)(6).

#### 1.    Standing

The Court starts with Cooper's challenge to Clark's standing to bring Count One, before turning, if appropriate, to the merits of that cause of action.  *See Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023) ("We begin with standing because it is a jurisdictional requirement and must be assessed before reaching the merits." (internal quotation marks omitted)). Article III of the U.S. Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting U.S. Const.

art. III, § 2). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *Id.* (internal quotation marks omitted). And in the class action context, at least "one named plaintiff [must] have standing with respect to each claim." *Hyland v. Navient Corp.*, 48 F.4th 110, 118 (2d Cir. 2022). To satisfy the "irreducible constitutional minimum of standing," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks omitted), "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief," *TransUnion*, 594 U.S. at 423.

Of those harms that "readily qualify as concrete injuries under Article III," "[t]he most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Id.* at 425. A bare violation of a statutory right does not on its own constitute a concrete injury. *Gillett v. Zara USA, Inc.*, No. 20 Civ. 3734 (KPF), 2022 WL 3285275, at *5 (S.D.N.Y. Aug. 10, 2022) ("With regard to injuries arising out of a defendant's violation of a statute, the Supreme Court explained that courts may not assume that the existence of a statutory prohibition or obligation automatically elevates that prohibition or obligation to a harm that is concrete under Article III." (citing *TransUnion*, 594 U.S. at 424-27)). Rather, "a plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm beyond the statutory violation itself." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) (citing *TransUnion*, 594 U.S. at 424-31).

In challenging this Court's jurisdiction to hear Count One, Cooper first contends that Clark lacks standing to assert an untimely wage claim because Clark was ultimately paid his wages due

(that is, at the conclusion of each biweekly pay cycle) and so cannot rely on economic loss as a basis for asserting a concrete injury in fact.  Motion at 7-8.  Next, Cooper argues that Clark cannot "establish standing solely through liquidated damages" as provided for under Section 198 of the NYLL, which permits an employee "to recover the full amount of any underpayment" and "an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due," N.Y. Lab. Law § 198(1-a).  *See* Motion 8-9.  In Cooper's view, under Section 198 the "full amount of any underpayment" due to Clark for a pay frequency violation would be zero dollars, and, as a result, the liquidated damages—that is, "one hundred percent of the total amount of wages found to be due"—would also be zero dollars.  *Id.*  Both arguments miss the mark, as Clark need not rely on a theory of either unpaid wages or liquidated damages for purposes of Article III standing.

Rather, Clark's allegations of mere delayed payment are sufficient.  Once again, Clark has alleged that he was compensated on a biweekly basis for the manual work he performed for Cooper.  *See* Complaint ¶¶ 15 (manual work), 18 (biweekly payments), 48 (manual work).  Clark thus allegedly received half of all his wages a week after the statutory deadline imposed by the NYLL.  *See id.* ¶ 19 ("Thus, for half of each bi-weekly pay period, [Clark] was injured in that he was temporarily deprived of money owed to him, and therefore he could not invest, earn interest on, or otherwise use these monies that was rightfully his.").  As numerous judges in this Circuit have held, this "[t]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing."  *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019); *see Rankine v. Levis Strauss & Co.*, 674 F. Supp. 3d 57, 63-64 (S.D.N.Y. 2023) (holding that the plaintiff had standing to bring a Section 191 untimely wage claim based on the temporary deprivation of wages owed and further explaining that the plaintiff

need not allege specifically how he intended to take advantage of the time value of his wages had they not been improperly withheld); *Gillett*, 2022 WL 3285275, at \*5-7 (holding that the plaintiff had standing to bring his pay frequency claim under Section 191 of the NYLL because the "temporary withholding of money [] which Plaintiff was owed—an injury Plaintiff purportedly suffered every pay period he worked for Defendants—is a concrete, economic harm"); *Espinal v. Sephora USA, Inc.*, No. 22 Civ. 3034 (PAE) (GWG), 2022 WL 16973328, at \*3 (S.D.N.Y. Nov. 16, 2022) (concluding that "the late payment of wages can constitutes a concrete harm sufficient to confer standing on a plaintiff who seeks relief under Sections 191 and 198 of the NYLL" and collecting cases (quoting *Rosario v. Icon Burger Acquisition LLC*, No. 21 Civ. 4313 (JS) (ST), 2022 WL 198503, at \*3 (E.D.N.Y. Jan. 21, 2022))), *report and recommendation adopted*, 2023 WL 2136392 (S.D.N.Y. Feb. 21, 2023).

Accordingly, Clark has sufficiently pleaded a concrete injury to confer Article III standing.[2] The Court thus denies Cooper's motion to dismiss inasmuch it seeks dismissal of Count One for want of subject matter jurisdiction.

### 2.    Merits

Satisfied of its subject matter jurisdiction to consider Clark's untimely wage claim, the Court turns to Cooper's argument for dismissal of Count One under Rule 12(b)(6). On this score, Cooper argues that Section 191 does not itself create a private right of action for pay frequency

---

[2] Cooper asks this Court—in the event it finds that Clark has standing based on the lost time value of money—to "adopt [Clark's] position and find that the appropriate measure for liquidated damages is purely based" on that lost time value under Section 198. Motion at 10; *see id.* ("Adopting the appropriate measure for liquidated damages at this juncture would streamline the questions in dispute, which would: (i) most importantly, preserve judicial resources; and (b) provide the parties with the clarity necessary for quickly resolving this matter." (emphasis removed)). As the Court need not reach this issue to resolve Cooper's challenge to subject matter jurisdiction, the Court declines to do so.

violations, and further that Section 191 falls outside the purview of Section 198(1-a), which (as earlier discussed) provides for certain damages "[i]n any action instituted in the courts upon a wage claim by an employee"—notwithstanding the First Department's determination to the contrary on the latter point. *See* Motion at 10-14 (arguing that the First Department erred in *Vega* in interpreting "underpayment" in Section 198(1-a) to entail payments that were untimely and thereby "[w]rongfully" found a private right of action for pay frequency violations under Section 191).

As mentioned above, the First Department and Second Department have issued conflicting decisions on this very issue. *Compare Vega*, 107 N.Y.S.3d at 287-89 (holding that NYLL Section 198 provides a private right of action to seek damages for NYLL Section 191 pay frequency violations), *with Grant*, 204 N.Y.S.3d at 122-25 ("respectfully disagree[ing] with the reasoning of *Vega*" and holding that NYLL Section 198 does not provide a private right of action to seek damages for NYLL Section 191 pay frequency violations). District courts in this Circuit have likewise taken varied positions on the availability of a private right of action for such violations, although the vast majority have adopted *Vega*. *See, e.g.*, *Gamboa v. Regeneron Pharm., Inc.*, No. 22 Civ. 10605 (KMK), 2024 WL 815253, at *3-6 (S.D.N.Y. Feb. 27, 2024) (continuing to follow *Vega* and holding that Section 198(1-a) provides a private right of action for violations of Section 191(1)(a)); *Zachary v. BG Retail, LLC*, No. 22 Civ. 10521 (VB), 2024 WL 554174, at *5-9 (S.D.N.Y. Feb. 12, 2024) (same); *Birthwright v. Advance Stores Co., Inc.*, No. 22 Civ. 593 (GRB) (ST), 2024 WL 3202973, at *1-2 (E.D.N.Y. June 27, 2024) (same); *Cooke v. Frank Brunckhorst Co., LLC*, No. 23 Civ. 6333 (JAM), 2024 WL 2263087, *7-9 (E.D.N.Y. May 18, 2024) (same); *Covington v. Childtime Childcare, Inc.*, No. 23 Civ. 710 (BKS) (MJK), 2024 WL 2923702, at *3-5 (N.D.N.Y. June 10, 2024) (same). *But see Galante v. Watermark Servs. IV, LLC*, No. 23 Civ.

6227, 2024 WL 989704, at *6-8 (W.D.N.Y. Mar. 7, 2024) (agreeing with the Second Department's decision in *Grant* and holding that Section 198(1-a) does not provide a private right of action, either express or implied, for violations of Section 191(1)(a)); *cf. Espinal*, 2022 WL 16973328, at *6-9 (S.D.N.Y. Nov. 16, 2022) (explaining in a pre-*Grant* report and recommendation that "[w]hile we would likely not reach this conclusion ourselves if the issue were presented afresh, . . . we feel bound to follow *Vega*'s holding on this point").

Significantly, in mid-February of this year, the plaintiff in *Grant* filed a motion with the Second Department for reargument and leave to appeal to the New York Court of Appeals. *See* App. Div. Dkt. No. 2021-03202, NYSCEF No. 24. While the defendant opposed the request for reargument, the defendant took no position on the latter request for leave to appeal (at least as to the issue of whether a private right of action exists for pay frequency violations). *Id.*, NYSECF No. 25; *see id.* at 11-12 (contesting the plaintiff's request for leave to appeal only as to the question of whether liquidated damages or interest under Section 198 of the NYLL are considered penalties for purposes of Section 901 of the New York Civil Practice Law and Rules). That motion was fully submitted as of March 16, 2024, and is currently pending before the Second Department. *See id.*, NYSCEF No. 26.[3] It thus appears that the New York Court of Appeals may soon be positioned to resolve the conflict in the Appellate Division and issue a decision in *Grant*, which of course would bind this Court as to the statutory construction of the NYLL. *See Wisconsin v. Mitchell*,

---

[3] In May 2024, the plaintiff in *Grant* informed the Second Department that the New York State Senate declined to include the Governor's proposed change to Article 6, which would have provided that liquidated damages are unavailable for violations of Section 191 "where the employee was paid in accordance with the agreed terms of employment, but not less frequently than semi-monthly." App. Div. Dkt. No. 2021-03202, NYSCEF No. 27; *id.*, NYSCEF No. 24 at 7-8. The defendant in *Grant* vigorously contests the import of the decision. *Id.*, NYSCEF No. 28.

508 U.S. 476, 483 (1993) ("There is no doubt that [federal courts] are bound by a state court's construction of a state statute.").

In the interest of conserving the Court's and the parties' resources, the Court reserves ruling on Cooper's motion to dismiss inasmuch as it seeks dismissal of Clark's Section 191 claim under Rule 12(b)(6) pending the presumptive review of *Grant* by the New York Court of Appeals.  *Cf. Urena v. Sonder USA Inc.*, No. 22 Civ. 7736 (VM), 2024 WL 1333012, at *3 (S.D.N.Y. Mar. 28, 2024) (staying proceedings involving Section 191 claim "pending potential New York Court of Appeals' review of" *Grant*).  As the Court intends to request supplemental briefing on this issue (whose scope and timing will depend on developments in *Grant*) and need not rely on any arguments in Cooper's Reply based on *Grant*, Clark's motion to strike the Reply and Clark's request in the alternative to file a sur-reply are denied as moot.

## B.    Contractual and Quasi-Contractual Claims

The Court proceeds to consider Cooper's arguments urging dismissal of Clark's claims for breach of contract and for unjust enrichment and quantum meruit, starting with the former.  To state a claim for breach of contract under New York law, "a [plaintiff] need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation omitted).  Cooper argues that Clark has failed to adequately allege the existence of a contract (and so has failed to allege the remaining elements as well).  Motion at 14-17.  The Court disagrees.

Clark has alleged that Cooper entered into the Public Works Contracts and that each of these contracts required Cooper to pay its workers "at or above" local prevailing wages.  *See* Complaint ¶¶ 56, 57.  Clark has further alleged that throughout his employment with Cooper, he

worked in "public buildings and facilities in New York County, Kings County, Bronx County, Nassau County, Suffolk County, and [] various locations in New Jersey," *id.* ¶ 20, and that he was paid below local prevailing wages, *id.* ¶¶ 2, 57, 58.  At this early stage, when the Court accepts these allegations as true and draws all inferences in Clark's favor, these allegations sufficiently state a claim for breach of contract—especially given that the relevant details concerning those public works contracts may well be peculiarly within Cooper's knowledge.  *See Mota v. Abalon Exterminating Co., Inc.*, No. 22 Civ. 7602 (MKV), 2023 WL 5211022, at *4 (S.D.N.Y. Aug. 14, 2023) (explaining that where plaintiffs have alleged that defendants "agreed to be the contractor or subcontractor for multiple public works projects, that the contracts covering those public works projects required the payment of prevailing wages to those who worked on the project, and that Plaintiffs worked on those projects but were not paid prevailing wages," courts have found these allegations sufficient to state a claim for breach of contract and collecting cases); *see also id.* at *5 ("There is no requirement, after all, that a plaintiff list at the pleadings stage every public contract on which he has worked.").  Accordingly, the Court denies Cooper's motion to dismiss Count Two.

Cooper's arguments for dismissal of Clark's claim for unjust enrichment and quantum meruit in Count Three are similarly unavailing.  Under New York law, unjust enrichment and quantum meruit claims may be considered together as a "single quasi contract claim," *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005), as the former is merely "a required element for an implied-in-law, or quasi contract," and the latter is "one measure of liability for the breach of such a contract," *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991) (cited favorably in *Mid–Hudson Catskill Rural Migrant Ministry*, 418 F.2d at 175), *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992).

To demonstrate unjust enrichment under New York law, "a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Old Republic Nat'l Title Ins. Co. v. Luft*, 859 N.Y.S.2d 261, 262 (2d Dep't 2008) (citations omitted). And to recover in quantum meruit under New York law, a plaintiff must show "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid–Hudson Catskill Rural Migrant Ministry*, 418 F.3d at 175 (internal quotation marks omitted).

In urging dismissal of Clark's quasi-contractual claim, Cooper argues that Clark "in no way claims that Cooper was enriched by [the] alleged underpayment of prevailing wages, and only generally claims that he was not paid prevailing wages while working on unidentified contracts during an unidentified amount of time." Motion at 18. But if Cooper was required to pay its laborers on public works projects local prevailing wages and failed to play Clark those wages, the natural inference is that Cooper was enriched by that underpayment. Clark's allegations to that effect are sufficient to put Cooper on notice of the nature of Clark's claim, and at this juncture, Clark may proceed on his quasi-contractual claim in the alternative to his claim for breach of contract. *See Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir. 1996); Fed. R. Civ. P. 8(d)(2). Accordingly, the Court denies Cooper's motion to dismiss Count Three.

## IV. Conclusion

For the foregoing reasons, the Court denies Cooper's motion to dismiss insofar as it seeks dismissal of Count One for want of jurisdiction and dismissal of Counts Two and Three for failure to state a claim. The Court reserves ruling on Cooper's motion insofar as it seeks dismissal of

Count One for failure to state a claim.  The Court will separately issue an order scheduling an initial pretrial conference.  The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 20 and 28.

      SO ORDERED.

Dated: August 5, 2024
      New York, New York

                                         JOHN P. CRONAN
                                 United States District Judge